A. W. CIES, Respondent, v. AARON W. GALE, Appellant.

Kansas City Court of Appeals, February 17, 1913.

1. REAL ESTATE BROKERS: *Commission.* Where the owner tells the agent he can price the land at $130 per acre but that if it is sold, he, the owner, must have $125 an acre net to him, and never varies fom those terms, and the land is sold for $125 per acre to a purchaser who would not have paid more, and the sale at $125 is made by the owner in good faith and not to deprive the agent of his commission, the agent cannot recover even though the purchaser be of his procuring.

2. ———: ———: Rule as to Brokers' Contracts. When a contract is made on a condition, a person seeking to recover on such contract must bring himself within such condition. And this applies to brokers' contracts.

3. INSTRUCTIONS: Form of Verdict. An instruction containing simply a form of verdict and nothing more, with no prefatory explanation showing in what event it is to be used, is likely to be misleading and work prejudice to the other side.

Appeal from Livingston Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED.

*Frank Sheetz* and *Lewis A. Chapman* for appellant.

*J. E. Watkins* and *J. M. Davis & Son* for respondent.

TRIMBLE, J.—This suit raises again the oft recurring question of a broker's right to commission for the sale of real estate. The petition asks, on the sale made, for two per cent thereof as the usual and customary rate charged by brokers.

The facts are as follows: Plaintiff, Cies, an auctioneer by trade or profession, but who on the side sold real estate for commission when he had oppor-

tunity, was approached by defendant Gale on the subject of selling the latter's farm. Plaintiff testified: "Mr. Gale came and asked me if I would sell his farm, and I told him I would, and asked him his price, and in regard to it, and took his land *a great deal* under the circumstances I would any other land. He priced the land at one hundred and thirty dollars per acre and said he wanted one hundred and twenty-five dollars *net*. On cross-examination he said: "Q. You say that you never named any commission to Mr. Gale? A. No, sir. I told him the regular commission, and he had been receiving commissions, and I guess he understood something about it. Q. He wanted one hundred and twenty-five dollars *net?* A. That was the price he made me. Q. And told you that all the time? A. Yes. Q. And never varied from that? A. I never saw him afterwards. Q. There was never any understanding squarely, except that he was to have one hundred twenty-five dollars *net to him?* A. Yes, sir."

The defendant swore that nothing was said about a two per cent commission; that he told plaintiff he had listed it with the other agents at $130 per acre; that plaintiff could cut this price anywhere he wanted to on his commission but that he must have $125 net.

The only thing plaintiff claims to have done in selling the farm, was to tell one Roy Moore, when the latter inquired over the telephone about the Elliott farm, that he had the Gale farm at the price of $130 per acre. Plaintiff's contention is that J. R. Townsend, the purchaser of the farm, obtained his knowledge of the Gale farm being for sale from the information thus imparted by plaintiff to Roy Moore. It seems that shortly after this telephone conversation, Townsend, who afterwards purchased the land, went out to see the Gale farm in company with Allen Moore, a brother of Roy's. Townsend is also a brother-in-law of Roy Moore. Both Townsend and Roy Moore

swear that nothing was ever said by Roy Moore to Townsend about the Gale farm until after Townsend had himself begun negotiations with Gale for the purchase of the farm, and that Roy never did tell Townsend of the information he had obtained from Cies over the phone. Roy does say, however, that he told his brother Allen about this conversation but it does not appear in evidence when he did so. Allen Moore did not testify, being in the hospital. Roy Moore also testified that he was not acting for Townsend when he called Cies over the phone and learned of the Gale farm.

All the negotiations between Townsend and Gale were conducted by themselves and resulted in a sale by Gale to Townsend of the former's farm at $125 per acre. Cies never knew of Townsend wanting the land until after the sale had been made to him. He never, prior to that time, said anything to Gale about Townsend nor to Townsend about Gale. As stated before, all he did was to tell Roy Moore of the Gale farm. The suit was for $312.50, being two per cent on $15,625, the price of the farm at $125 per acre. The trial resulted in a judgment for plaintiff for $125.

Defendant, in addition to several other assigned errors not mentioned now, makes two points in behalf of his appeal. *First,* that as plaintiff's contract was that defendant was to have $125 *net to him,* plaintiff cannot recover unless he shows that a sale was made for more than that sum or that the purchaser was willing and able to pay more. In other words, by the terms of the contract, plaintiff's commission must necessarily come out of the excess above $125 per acre, and if there is no excess, there can be no commission. *Second,* that the sale was not the result of plaintiff's efforts nor procurement.

A careful examination of plaintiff's evidence, as hereinbefore shown, discloses that the terms of the sale were to be $125 per acre *net to the owner.* It is

Cies v. Gale.

true plaintiff elsewhere makes statements which indicate he thought he was to get a commission on a sale whatever the price. But his explicit and definite statement as to what the contract was cannot be overridden by his construction of that contract. It is true also that after the sale defendant said to Dick Jones, "I expect I will have to pay Cies a commission for that farm." But this could not be construed as an admission of what the contract was. It had nothing to do with the terms of the contract. It was said after Cies had threatened to sue him. Whether defendant was liable or not was a legal question depending upon the nature of the contract. The mere expression of an apprehension that he might have to pay when sued, cannot be construed into an admission of a fact in regard to the contract, especially when plaintiff's own testimony shows that, if it be an implied admission, it was incorrect. So that under this contract, plaintiff's right to a commission was conditional, or contingent. He was to sell for $125 per acre or more, and unless he procured a purchaser who was willing to pay more he would not get any commission. The owner was to receive $125 net. All over that was to be the agent's. He therefore stood to earn a large commission or none. When a contract is made upon a certain condition, a person seeking to recover under such contract must bring himself within such condition. And this applies to broker contracts. [Hughes v. Dodd, 164 Mo. App. 454; LaForce v. University, 106 Mo. App. 517; Crowley v. Summerville, 70 Mo. App. l. c. 380; Blackwell v. Adams, 28 Mo. App. 63.]

It makes no difference in this case that plaintiff was not explcitly told that if the sale did not amount to more than $125 per acre he would get no commission. He understood its terms and he must know for himself its legal effect. There was no evidence that Townsend would have paid more for the land. In fact, when defendant offered to prove by Townsend that he

would *not* have paid more, plaintiff objected and the evidence was excluded. In addition to this, Gale would not make his net price of $125 per acre to Townsend until he was assured that no agent had sent Townsend to him. In other words, the sale by Gale at $125 per acre was made in good faith and not for the purpose of defeating a commission. So that, in view of all that has been said in this point, we are of the opinion that plaintiff has no case.

This being so, it is hardly necessary to notice defendant's second point that the sale was not the result of plaintiff's efforts. Plaintiff informed Roy Moore that he had the farm, but nowhere shows affirmatively that this information was conveyed to the purchaser Townsend. Both Moore and Townsend, however, say that no such information was conveyed to or received by Townsend. The evidence does show that Moore did tell his brother, Allen Moore, of the telephone conversation but it does not appear when he did so. Nor does it show that either Roy or Allen Moore were acting for Townsend at the time. It may be the circumstances including the relationship of the parties were such as to authorize a jury to infer or believe that the information given by plaintiff over the phone to Roy Moore was afterwards conveyed to Townsend but, even so, the question would still remain whether, under the circumstances of this case, this made plaintiff the procuring cause of the sale. The St. Louis Court of Appeals in Warren v. Crain, 71 Mo. App. 638, in a similar case, expressed doubt on this proposition but did not decide it, nor do we.

Instruction No. 2 for plaintiff was given in this form:

"A. W. Cies, Plaintiff,

v.

Aaron W. Gale, Defendant.

We, the jury, find for the plaintiff in the sum of ——————— Dollars."

This instruction did not contain a prefatory explanation showing that it was to be used only in case the jury found for plaintiff. We think a form of verdict should always contain an explanation showing in what event it is to be used. A form given without containing such explanation might perhaps be misleading and work prejudice to the other side. [Seidel v. Railroad, 109 Mo. App. 164.] The case, however, is reversed upon the first point considered. All concur.